UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR JAVIER GUADAMUZ LOPEZ,<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY,<br>Respondent. | Case No. 1:26-cv-7281-DC-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Oscar Javier Guadamuz Lopez seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his immigration re-detention without a bond hearing violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

On July 19, 2023, immigration authorities granted petitioner humanitarian parole to enter the United States. ECF No. 1 at 19; ECF No. 5-1 at 2. This entry was pursuant to the Nicaraguan parole process implemented on January 9, 2023. *See* Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1255, 2023 WL 121511 (Jan. 9, 2023). The process required petitioner to apply for humanitarian parole through a supporter in the United States who agreed to provide financial support for the duration of petitioner's parole period. 88 Fed. Reg at 1256.

Petitioner was required to "pass national security, public safety, and public health vetting prior to receiving a travel authorization." *Id*. Once approved, petitioner had to arrange a flight to the United States and seek entry. *Id.* at 1261. The parole period would enable petitioner "to seek humanitarian relief or other immigration benefits for which [he] may be eligible, and to work and contribute to the United States." *Id.* at 1256.

Petitioner filed an asylum application on November 30, 2024. ECF No. 5-1 at 2. In support of that application, he attended a biometrics appointment with immigration authorities on December 16, 2024. ECF No. 1 at 12. Petitioner's asylum application is still pending. ECF No. 5-1 at 2. Petitioner applied for employment authorization on May 3, 2025, and received a social security number. ECF No. 1 at 17; ECF No. 5-1 at 1. He obtained a valid driver's license. ECF No. 1 at 15. Petitioner is in compliance with his alien registration obligations. ECF No. 5-1 at 3. According to an immigration officer, petitioner's parole period expired on June 12, 2025.[1] *Id.* at 2.

On July 16, 2026, petitioner was arrested by local law enforcement for a misdemeanor charge of soliciting prostitution. ECF No. 5-1 at 3. That day, ICE encountered him at the jail and took him into immigration custody when he was released. ECF No. 5-1 at 2. On July 18, 2026, a deportation officer served petitioner with a notice to appear in immigration court, charging him with being an "arriving alien." ECF No. 5-2 at 1. On August 18, 2026, a prosecutor filed a misdemeanor charge of soliciting prostitution against petitioner in state court. ECF No. 1 at 20. That matter remains pending. ECF No. 5-1 at 3.

Respondent states that petitioner is being detained under 8 U.S.C. § 1225(b)(2)(A). ECF No. 5 at 1. On August 24, 2026, petitioner sought a custody redetermination by the immigration court, which denied the request on the basis that it had no jurisdiction. *See* ECF No. 5-3 at 1.

[1] On March 25, 2025, the Department of Homeland Security ("DHS") terminated the parole process under which petitioner entered the United States. *See* Termination of Parole Processes for Cuban, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (March 25, 2025).

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention without an individualized bond hearing violates due process.[2] ECF No. 1 at 4. Respondent asserts that immigration authorities lawfully detained petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), which authorizes mandatory detention without bond. ECF No. 5 at 1. Respondent also acknowledges that the Court of Appeals has rejected respondent's argument that section 1225(b) applies to noncitizens who are detained by ICE in the interior of the United States. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026).[3] This holding accords with the decisions of numerous other Courts of Appeals. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026).

Respondent attempts to distinguish *Rodriguez Vazquez*, arguing that it only applies to

---

[2] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

[3] Because the mandate has yet to be issued, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41.

immigrants who are "first encountered and detained in the interior," whereas petitioner was allowed into the United States through humanitarian parole. ECF No. 5 at 1. But nowhere in *Rodriguez Vazquez* does the Court of Appeals so limit its ruling. Rather, the Court of Appeals holds that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez*, 183 F.4th at 1165. Petitioner fits squarely into this holding, since his humanitarian parole into the United States is not an "admission" under the Immigration and Nationality Act, *see* 8 U.S.C. § 1101(a)(13)(B); *see also* 8 C.F.R. § 1.2, and he was apprehended in the interior of the United States.

Respondent also acknowledges that this court has granted relief in similar cases "as a matter of due process." ECF No. 5 at 2. Accordingly, I will address the due process claim. Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Respondent does not dispute that petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause based on his legal entry into the United States on humanitarian parole. *See* ECF No. 5 at 2; *see also Wistong F. v. Immigr. & Customs Enf't*, No. 1:26-cv-03399-TLN-DMC, 2026 WL 1361794, at *2 (E.D. Cal. May 15, 2026). Pursuant to the parole process for Nicaraguan immigrants, *see* 88 Fed. Reg. 1255, immigration authorities pre-authorized petitioner to fly to the United States and apply for entry, which they granted him on July 19, 2023. ECF No. 1 at 19; ECF No. 5-1 at 2. Petitioner lived in the United States for three years prior to his re-detention by ICE on July 16, 2026. *Id.* at 1. Petitioner's entry into the United States under the pre-approved grant of humanitarian parole and his time out of custody since his legal entry have created a substantial constitutionally protected liberty interest in

continued release.[4] *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Accordingly, I must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release from custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release during his time on humanitarian parole in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free,

---

[4] Respondent emphasizes that petitioner's parole expired in 2025. ECF No. 5 at 1; ECF No. 5-1 at 2. However, "petitioner's liberty interest did not expire along with his parole." *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025); *see also Kelati v. Chestnut*, No. 1:26-cv-3333-DAD-CSK, 2026 WL 1363088 at *2 (E.D. Cal. May 15, 2026); *Nath v. Chestnut*, No. 1:26-cv-1800-DC-CKD, 2026 WL 743356 at *1 (E.D. Cal. Mar. 17, 2026).

which developed over the year he resided in the United States.”).

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. As a beneficiary under the Nicaragua parole process, petitioner was required to apply for the process from outside the United States and pass national security, public safety, and public health vetting prior to being approved to fly into the United States to seek entry. *See* 88 Fed. Reg. at 1256. The implementing regulations require that a noncitizen “present neither a security risk nor a risk of absconding.” 8 C.F.R. § 212.5(b). Thus, if a noncitizen has been granted humanitarian parole, it means that a DHS official decided that the individual did not pose a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b); *see also Castellano v. Blanche*, No. 2:26-cv-0124-GMN-BNW, 2026 WL 1414049, at *2 (D. Nev. May 20, 2026).

Accordingly, “[r]elease [on humanitarian parole] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.” *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff’d sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also Omer G. G.*, 815 F. Supp. 3d at 1104. Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner’s re-detention will not be pursuant to a valid state interest. *See Omer G.G.*, 815 F. Supp. 3d at 1106 (“Civil immigration detention, which is ‘nonpunitive in purpose and effect[,]’ is justified when a noncitizen presents a risk of flight or danger to the community.”) (quoting *Zadvydas*, 533 U.S. at 690).

“Where, as here, ‘[the petitioner] has not received any bond or custody . . . hearing,’ ‘the risk of an erroneous deprivation [of liberty] is high’ because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention.” *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner’s re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner’s liberty. *See id*. On the contrary,

the fact that the government maintains that petitioner is subject to mandatory detention without a bond hearing indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. *See* ECF No. 5 at 1. Petitioner's attempt to obtain a bond hearing was rejected by the immigration court for lack of jurisdiction. ECF No. 5-3 at 1. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondent has provided no information about the additional burden that would fall on it as a result of being required to provide a bond hearing. *See* ECF No. 5. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 5. Respondent asserts that the court has "ordered bond hearings for similarly situated petitioners[.]" ECF No. 5 at 2.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody. *See J. O. J.L. v. Blanche*, No. 1:26-cv-4142-DAD-JDP, 2026 WL

1745732, at *4 (E.D. Cal. June 17, 2026), *report and recommendation adopted*, 2026 WL 1832766, at *1 (E.D. Cal. June 25, 2026); *Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-2915-DJC-JDP, 2026 WL 1224248, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted*, 2026 WL 1330554 (E.D. Cal. May 13, 2026)*; Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal. Mar. 20, 2026). In some circumstances, however, the court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Zinermon*, 494 U.S. at 128 (cleaned up).

However, respondent neither asserts that there was such a necessity of quick action, nor that it provided petitioner a post-deprivation hearing. *See* ECF No. 5; ECF No. 5-3 at 1. Although petitioner had been arrested for a low-level misdemeanor, it appears that he was released to ICE's detainer from local custody the same day, indicating that state authorities did not find him a danger or a flight risk based on that arrest. *See* ECF No. 5-1 at 2. Respondent neither argues that a misdemeanor arrest for soliciting prostitution makes petitioner a danger or a flight risk, nor explains why a prompt hearing was not held upon petitioner's detention. *See* ECF No. 5. Other than the misdemeanor arrest, there is no indication of any violation of release conditions or other misconduct. ECF No. 5-4.

Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025). Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025); *Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, 2026 WL 2494984, at * 3 (E.D. Cal. Aug. 25, 2026); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-5661-DAD-SCR, 2026 WL 2294963 (E.D. Cal. Aug. 10,

2026). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted). This supports petitioner's immediate release from custody.

Here, petitioner was at liberty in the United States for three years prior to being re-detained. Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. Petitioner's due process rights have been violated such that the provision of a bond hearing is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1. Accordingly, the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 232-656-656) from its custody on the same conditions, if any, as his prior release. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Central Valley Annex Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 5, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE